**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | | |
|---|---|---|
| ALTERNATIVE MATERIALS, LLC, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| TCH CONSTRUCTION GROUP, | **)** | Civil Action No.: |
| INC.; TRM TRANSPORTING, LLC.; | **)** | |
| TIM MONROE; AKERS BUILDING | **)** | |
| SYSTEMS, INC., | **)** | |
| | **)** | |
| Defendants. | **)** | |

## COMPLAINT

Comes Now Alternative Materials, LLC ("Alternative Materials"), herein also referred to as Plaintiff, in the above numbered and styled case, and complains of TCH CONSTRUCTION GROUP, INC. ("TCH CONSTRUCTION"), TRM TRANSPORTING, LLC ("TRM TRANSPORTING"), TIM MONROE ("MONROE"), AKERS BUILDING SYSTEMS, INC. ("ARCO"), and herein collectively called Defendants, and for cause of action will show to the Court as follows:

## INTRODUCTION AND NATURE OF ACTION

1.     Alternative Materials is in the business of mining, processing and

1

selling of limestone which is used to make soil additives used by farmers for their seasonal crops. Alternative Materials leases and operates a limestone quarry located in Marianna, Florida (the "Quarry").

2.     Two types of raw materials are mined at the Quarry.   The first is "Ocala Limestone" and the second is "Marianna Limestone."  Both materials are used to make "Aglime."  Aglime is used for soil treatments.  Its primary purpose is to reduce soil acidity. Alternative Materials sales both types of limestone to farmers throughout the state of Florida.

3.     Alternative Materials sought to have a storage facility built at the Quarry to process and store the Marianna Limestone.  Marianna Limestone is sensitive to the weather elements and cannot be converted to Aglime when it is wet.  The storage facility was required to protect and dry the Marianna Limestone and maintain its natural qualities until the finished product was ready to ship to Alternative Materials customers throughout the state of Florida. The storage facility was to hold twenty-five thousand tons of limestone.

4.     Alternative Materials contracted with Defendants TCH Construction and Monroe for the purchase, construction, and installation of a manufactured gable clear span shed (the "Structure") at the Marianna, Florida Quarry. The details of the agreement were confirmed in a writing exchanged between the parties on

June 8, 2020 (the "Agreement").  Exhibit A: Agreement.

5.      The Agreement provided for a payment schedule and total amount due from Alternative Materials of $1,540,000.   The Agreement included a construction timeline with a completion date of August 15, 2020 and a "worst case scenario" completion date of September 1, 2020.  *Id*.

6.      Alternative Materials made advance payments totaling $304,000 in accordance with the agreed upon schedule to TCH Construction.   Exhibit B:  Wire Transfers.

7.      As noted in the Agreement, time was of the essence due to weather concerns and customer requirements.  Alternative Materials alerted Monroe and TCH Construction of completion concerns once it became evident that TCH Construction had failed to begin site preparation work and ARCO and TRM Transporting had not delivered materials in compliance with the agreed timeline.

8.      The Defendants failed to meet the completion date requirements of the Agreement causing damage to Alternative Materials both as to money paid for services not rendered, materials not provided, loss of profits and continuing damage to Alternative Materials business reputation and profits.

## THE PARTIES

9.     Plaintiff Alternative Materials, LLC is a Wyoming limited liability company with a principle place of business in Irving, Texas and an active quarry and material sales operation in Marianna, Florida.

10.     Defendant TCH Construction Group, Inc. is a corporation incorporated under the laws of North Carolina with its principle place of business at 1509 W. 5th Street Lumberton, NC 28358. It is deemed a citizen of North Carolina for purposes of 28 U.S.C. § 1332(c).

11.     Defendant Tim Monroe is an individual who upon information and belief resides in the state of North Carolina.

12.     Defendant TRM Transporting, LLC upon information and belief is a North Carolina limited liability company with its principle place of business at 1509 W. 5th Street Lumberton, NC 28358. It is deemed a citizen of North Carolina for purposes of 28 U.S.C. § 1332(c).

13.     Defendant Akers Building Systems, Inc. is a corporation incorporated under the laws of Georgia with a principle place of business located at 3300 Holcomb Bridge Road, Suite 201 Peachtree Corners, GA 30092. It is deemed a citizen of Georgia for purposes of 28 U.S.C. § 1332(c).

## JURISDICTION & VENUE

14.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §
1332(a)(2).

15.     The amount in controversy, without interest and costs, exceeds
$75,000.00.

16.     Venue lies in the Northern District of Florida pursuant to 28 U.S.C. §
1391(b).

17.     All conditions precedent for bringing this action have been fully
performed, waived, or excused.

## FACTUAL BACKGROUND

18.     Alternative Materials is in the business of mining, processing,
marketing and selling limestone soil supplements from its limestone quarry located
in Marianna, Florida. This limestone is used to make Aglime which is used by
Alternative Materials' farming customers located in Florida.

19.     Marianna Limestone is particularly sensitive to moisture and will not
convert into Aglime if it is wet.

20.     To protect, dry, process and store the Marianna Limestone,

Alternative Materials  sought contractors for the construction of a metal building or a manufactured gable clear span shed (the "Structure") at the Marianna, Florida Quarry (collectively the "Project").

21.     After contact by Monroe, Alternative Materials entered into an agreement with Defendants Monroe and TCH Construction in response to a written offer which was accepted by Alternative Materials on June 8, 2020.  An acceptance confirmed by TCH Construction via text message and performance.

22.     The Agreement set forth a payment schedule, dimensions and other details of the Structure, work dates, timelines, materials, and costs for site preparation and installation of the Structure. Monroe and TCH Construction selected ARCO as the primary supplier of the Structure components required by the Agreement.  The components of the Structure were to be supplied by Defendant ARCO and delivered by Defendant TRM Transporting, LLC to the Marianna, Florida Site.

23.     Construction plans for the Structure required concrete footers to be installed at the Site by TCH Construction. TCH Construction indicated that the footers would take three to four weeks to install and properly cure.

24.     The Structure was to be fabricated by ARCO and delivered by TRM Transporting to the Marianna, Florida Site.

6

25.     Once the footers properly cured, TCH Construction would complete construction of the Structure in accordance with the agreed timeline.

26.      The Structure was to be a 200 feet by 400 feet and 30 feet tall, "eve" style building.   The construction timeline called for the completion of the footers by the "third week of July, worst case August 1st" and completion of the total Project on "August 15th, worst case scenario of September 1st."  Exhibit A: Agreement.

27.     Payment schedules required payments in percentage increments of 10%, 50%, and 40% with a total payment of $1,540,000 paid at completion of the Project (the "Payment Schedule").  *Id*.

## Amendments to the Agreement

28.     On June 18, 2020, Alternative Materials and Monroe agreed to modify the size and the type of Structure from a 200 feet by 400 feet building to a 200 feet by 300 feet "clear span" building to keep the total price of the Project on budget at $1,540,000.

29.     On June 22, 2020 Alternative Materials paid $154,000 by wire transfer to TCH as required by the Payment Schedule of the Agreement.  Exhibit B:  Wire Transfers.

30.     On July 1, 2020 Alternative Materials and Monroe met in Mariana, Florida for an on-site Project inspection.  At that meeting the parties agreed to modify the remaining Payment Schedule.

31.     The modified scheduled provided for a down payment of $150,000 on the purchase of the Structure components. The third payment scheduled was modified in order to obtain other required materials for the Structure.   The modified scheduled required the third payment of $450,000 upon completion of the footers. The modified fourth payment was the final payment as the remaining balance due upon Project completion.

32.     The payment modifications did not in any way change or adjust the Project's timeline or the final price of the Project per the Agreement.

33.     In accordance with the modification on July 8, 2020, Alternative Materials wired the second scheduled payment of $150,000 to TCH Construction which was paid to ARCO as a down payment for the Structure.  Exhibit B:  Wire Transfers.

## **Failure of Performance Under the Agreement**

34.     After the second payment on July 8, 2020, Alternative Materials emailed Monroe and TCH Construction expressing concerns at the Defendants

failure to install the required concrete footers.   Alternative Materials expressed its concern that the Defendants would not be able to meet the agreed upon modified schedule of the "third week of July" for the footers per the Agreement.

35.     Monroe responded to Alternative Materials concerns with a series of excuses, misinformation, and requests for additional money.

36.     Notwithstanding that the cost of the Structure per ARCO's invoice to TCH Construction was $749,554, on July 8, 2020, Monroe fraudulently indicated that the Structure alone would now cost $1,540,000 and an additional 20% down payment of $308,000.00 was required. This amount was outside of the payment amounts contained in the Agreement and the Payment Schedule.

37.     On July 10, 2020, Monroe emailed Alternative Materials requesting an additional $23,477 for a temporary trailer to be used as an onsite office. Notwithstanding the request for additional payments above the agreed payments by the Defendants, construction on the footers had not yet begun.

38.     On July 11, 2020, Alternative Materials emailed Monroe concerning the construction of the concrete footers. Monroe responded that TCH was in need of the building permits and reassured Alternative Materials that the permits would not cause delays.

39.     Monroe continued to represent that the Structure was being purchased from Defendant ARCO by Defendant TCH Construction and that $150,000 of the first scheduled payment was immediately paid to ARCO for materials in spite of the fact that the first scheduled payment was paid on June 22, 2020 to TCH Construction for site prep for the concrete footers.  The reality was that funds had not been paid to ARCO by TCH Construction as of July 9, 2020 as previously claimed by Monroe and in fact, was not due to ARCO until July 16, 2020.   Exhibit C:  Invoice.

40.     On July 17, 2020, Alternative Materials emailed Monroe to express serious concerns about the Defendants' ability to begin construction of the concrete footers and meet the construction timeline. Monroe responded with a request for more money in the amount of $450,000 to complete payment of the supplies and components for the Structure.

41.     TCH Construction's failure to maintain the construction schedule was extremely damaging to Alternative Materials operations because its clients include Florida peanut farmers with seasonal Aglime requirements.   The Mariana Limestone would be in high demand by the date of the agreed upon completion of the Structure. Failure to meet the required timeline did not provide enough time for Alternative Materials to harvest the correct tonnage of limestone, process and

secure it in the Structure, and maintain the product to meet the demands of its customers.

42.     Although Alternative Materials continued to make its concerns known to Monroe about the progress of the Project, the Defendants failed to meet the construction timeline and the "worst case scenario" timeline dates causing loss profits and damage to Alternative Materials reputation.

43.     Monroe and TCH Construction was unable to produce the building permits for the Project as requested by Alternative Materials.

44.     The Defendants have failed to complete construction of the Project at the Site as required by the Agreement.

45.     The Structure was not delivered by Defendants ARCO and TRM Transporting.

46.     Defendant ARCO did not provide or make available the Structure to Alternative Materials and did not return payments made.  ARCO canceled the order and retained the down payment.

47.     Monroe and TCH Construction failed to meet the terms of the Agreement and ARCO has canceled Alternative Materials order with no assignment of the supplies for the Structure or return of the down payment.

48.     When no work was completed or materials delivered, Alternative Materials notified Defendants it would suffer irreparable harm, canceled the Agreement, began to mitigate its damages and filed this lawsuit.

## COUNT I- Breach of Contract

### Against Defendants TCH Construction, and Tim Monroe

49.     Plaintiff reallege and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

50.     Plaintiff, Monroe, and TCH Construction are parties to a contract, the Agreement.

51.     Plaintiff performed its duties under the contract by paying the required payments under the Agreement.

52.     Monroe and TCH Construction breached the Agreement, including but not limited to failure to begin construction, not completing the construction according to the timeline contained in the Agreement, and not providing accurate information regarding the progress of the Project.

53.     Plaintiff suffered, and continues to suffer, damages caused by TCH Construction and Monroe's breach of the Agreement.

## COUNT II- Breach of Contract

## Against ARCO and TRM Transporting

54.     Plaintiff reallege and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

55.      Plaintiff was a third-party beneficiary to contracts between ARCO and TCH Construction regarding the purchase of the Structure. ARCO was to provide the Structure to TCH Construction for the Plaintiff. Plaintiff paid funds to Defendants for services and components that were not rendered.

56.      Plaintiff did not receive the intended benefit of the Agreement.

57.      Plaintiff was a third-party beneficiary to contracts between TCH Construction and TRM Transporting. TRM Transporting was to deliver the Structure and materials and components to be provided by ARCO. The Structure was never delivered to Plaintiff.

58.     Through information and belief funds were paid to ARCO and TRM Transporting from TCH Construction that were provided to TCH Construction for those purposes by Plaintiff.

59.      Plaintiff did not receive the intended benefit of the Agreement.

60.      Plaintiff suffered, and continues to suffer, damages caused by ARCO

and TRM Transporting.

## COUNT III- Fraudulent Misrepresentation
## Against TCH Construction and Monroe

61.     Plaintiff realleke and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

62.     TCH Construction and Monroe made false and misleading statements regarding material facts relating to the Agreement. At the time Plaintiff and TCH Construction entered into the Agreement, Monroe and TCH Construction represented itself as having the ability to do the work on the Project as described in the Agreement.

63.     TCH Construction and Monroe knew, or should have known, that the statements and representations relating to the construction on the Project as well as the timeline were false at the time they entered into the Agreement.

64.     TCH Construction and Monroe also made false statements to the Plaintiff regarding the status and timing of payments from the funds that were paid to them by the Plaintiff.

65.     TCH Construction and Monroe made the false statements and representations to Alternative Materials with the intent to induce Alternative Materials to enter into the Agreement and reap substantial, unjustified fees and

14

other benefits.

66.     Plaintiff suffered damages acting in reliance on TCH Construction
and Monroe's false statements and representations.

## COUNT IV- Fraud in the Inducement
## Against TCH Construction and Monroe

67.     Plaintiff reallege and incorporate the allegations in paragraphs 1-48
as though fully set forth herein.

68.     TCH Construction and Monroe represented from the outset that they
could complete the Project by August 15, 2020 Defendants knew that providing
this timeline on the Project would give them a competitive advantage on securing
the job from Plaintiff.

69.     TCH Construction and Monroe were aware of the purpose and need
for the building structure in that the limestone would be stored to preserve its
natural quality in order to meet demand. TCH Construction and Monroe had
knowledge of the Plaintiff's business timeline and utilized the date of August 15,
2020 to obtain Plaintiff's participation in the Agreement.

70.     The above representation by TCH Construction and Monroe were
knowingly and intentionally false. Defendants were not concerned with completing
the Project on time nor completing the job under "worst case scenarios" as

described in the Agreement. Defendants' only concern was securing the Agreement and to obtain payment when they knew they could not complete the Project on time.

71.     TCH Construction and Monroe intended for the Plaintiff to rely on their misrepresentation, and Plaintiff did rely on the misrepresentation by expending time, effort and sales expertise in preparing for the high volume season and production of Mariana Limestone to meet the seasonal demand.

72.      Plaintiffs were damaged by their reliance upon Defendants' misrepresentations when, pursuant to their fraudulent scheme, Monroe and TCH Construction took money from the Plaintiff for the Project, never began work on the Project, and failed to meet the construction timeline of August 15th or their "worst case scenario" timeline.

## COUNT V- UNJUST ENRICHMENT
### Against all Defendants

73.     Plaintiff reallege and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

74.     By, *inter alia*, paying substantial payments, fees, expenses, and other amounts under the Agreement to TCH Construction, TCH Construction has received a benefit.

75.     TCH Construction voluntarily accepted and retained the benefits received from the Plaintiff.

76.     Monroe, ARCO and TRM Transporting have all received funds from TCH Construction that were paid by the Plaintiff without providing the corresponding benefit to the Plaintiff.

## COUNT VI- Breach of the Implied Covenant of Good Faith and Fair Dealing Against TCH Construction

77.     Plaintiff reallege and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

78.     Plaintiff and TCH Construction are parties to a contract, the Agreement.

79.     Plaintiff did all or substantially all, of the actions required of it by the terms of the Agreement by making payments to TCH Construction.

80.     All conditions that were required of the Plaintiff were met.

81.     Defendant TCH Constriction never started the construction of the Project.

82.     Plaintiff was damaged by TCH Construction's' conduct.

## COUNT VII- FRAUD

### Against TCH Construction and Monroe

83.     Plaintiff realleage and incorporate the allegations in paragraphs 1-48 as though fully set forth herein.

84.     Monroe and TCH Construction provided false banking records to Alternative Materials. Monroe and TCH Construction sent wiring documents to Plaintiff falsely representing that $150,000 of Plaintiff's payment had been sent to ARCO in late June for supplies on the building.

85.     Monroe and TCH Construction made false statements for the costs of the Structure. Monroe and TCH Construction represented to the plaintiff that the cost of supplies for the Structure alone would amount to $1,540,000 and that the plaintiff would need to pay 20% more down.

86.     Monroe and TCH Construction supplied false information regarding permits needed for the Project to the Plaintiff. Monroe and TCH Construction continued to represent that they were working on obtaining building permits. The stated type of permits would change from drainage permits to obtaining general building permits. Monroe and TCH Construction finally falsely represented to Plaintiff that they would not need any building permit in the state of Florida for the Project.

18

87.     These above records and statements were known by Defendants Monroe and TCH Construction to be false at the time they were made. Defendants Monroe and TCH Construction had not received a quote from ARCO at the time Monroe and TCH Construction presented the falsified bank documents to Plaintiff. Monroe and TCH Construction modified their position with Plaintiff based on communications with ARCO, which included the 20% down payment of $150,000. Monroe and TCH construction knew there had not been a price change with ARCO after the modified agreement yet represented such an increase to Plaintiff that reflected the increase of 20% to $308,000. Monroe and TCH construction also knew that building permits would be needed in the state of Florida for the Project, especially for a Project that required a professional engineer licensed in Florida.

88.     These false statements were made for the purpose of inducing the Plaintiff to act in reliance of the statements. Each record or statement by Monroe and TCH Construction was fraudulently made to either satisfy the concerns of the Plaintiff or wrongfully obtain additional money outside the Payment Schedule and outside the total amount for the Project.

89.     The Plaintiff relied on the false information provided by Monroe and TCH Construction. Plaintiff was led to believe that TCH Construction had sent ARCO money for the Structure in late June, that the adjusted down payment was a

new reflection in ARCO's price which Plaintiff could not afford, and that all building permits for the Project had been properly investigated by Monroe and TCH Construction.

90.     Plaintiff suffered and continues to suffer damage from the actions of Defendants Monroe and TCH Construction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alternative Materials demands judgment against Defendants as follows:

a)  Compensatory damages in an amount to be determine at trial;

b)  Compensatory damages in an amount to be determined at trial;

c)  Punitive damages;

d)  Rescission of the Agreement;

e)  A declaration that the Agreement is void;

f)  All costs of this action, including reasonable attorneys' fees and costs; and

g)  Such other and further relief as this Court shall deem just and

proper.

## **Demand For Jury Trial**

Plaintiff in the above-styled case hereby demands a trial by jury of all issues

so triable as a matter of right.

This the   9th   day of September, 2020.

Respectfully Submitted,

By:   */s/ E. Kirk Wood*
E. KIRK WOOD (#831816)
Attorney for Plaintiff

**OF COUNSEL:**

**E. KIRK WOOD**
**MICHAEL E. GURLEY, JR.**
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 612-0243
Facsimile:  (866) 747-3905
Kirk@Woodlawfirmllc.com
mgurleyjr@yahoo.com

**VIC BAKER** (*Pro Hac Vice to be filed*)
**VIC BAKER ATTORNEY AT LAW, LLC**
P.O. Box 31
Moody, AL 35004
Telephone: (205) 478-1608
vicbakerlaw@gmail.com

## <u>REQUEST FOR SERVICE BY CERTIFIED MAIL</u>

Pursuant to FRCP 4.1 and 4.2, Plaintiff request service of the foregoing

Complaint by certified mail.

## <u>SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:</u>

TCH Construction Group, Inc.
997 Harris Road
Lumberton, NC 28358

Timothy W. Monroe
1509 W. 5th Street
Lumberton, NC 28358

TRM Transporting, LLC
1509 W. 5th St.
Lumberton, NC 28358

Akers Building Systems, Inc.
c/o Andersen, Tate & Carr, P.C.
1960 Satellite Blvd., Suite 4000
Duluth, GA 30097


By:   */s/ E. Kirk Wood*
      E. KIRK WOOD
      Attorney for Plaintiff