## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ALTERNATIVE MATERIALS, LLC,

    Plaintiff,

v.                                     Case No.  5:20-cv-239-AW/MJF

TIMOTHY W. MONROE, *et al.*,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Alternative Materials, LLC ("AM"), has filed a "Motion for Entry of Default" against Defendant Timothy W. Monroe. Doc. 74. The undersigned construes AM's motion as a motion for default judgment under Federal Rule of Civil Procedure 37(c).[1] Monroe has filed a one-page letter, which the undersigned construes as a response in opposition. Doc. 77 at 1.

Because Monroe violated Rule 26(a)(3) by failing to provide certain pretrial document after being ordered to do so by the undersigned, the undersigned respectfully recommends that the District Court grant in part and deny in party AM's motion for default judgment. Specifically, the District Court should grant AM's

---

[1] *De Souza v. Charly's Shop, LLC*, No. 2:20-CV-364 TS-JCB, 2021 WL 3194404, at *1 (D. Utah July 28, 2021) (noting that a default judgment under Rule 37(c)(1), not an entry of default under Rule 55(a), is the appropriate method for addressing a party's failure to provide pretrial disclosures under Rule 26(a)(3)).

motion as to its fraud and fraudulent-misrepresentation claims against Monroe. But because AM fails to allege plausible breach-of-contract, unjust-enrichment, and fraud-in-the-inducement claims against Monroe, the District Court should deny AM's motion as to these claims and instead dismiss these claims for failure to state a plausible claim upon which relief can be granted. The undersigned also recommends that the District Court hold an evidentiary hearing to determine the damages to which AM is entitled or that the District Court refer this matter to the undersigned for such a hearing.

## I. BACKGROUND

On July 6, 2022, after the District Court adopted the undersigned's report and recommendation and denied AM's summary-judgment motion, the undersigned ordered Monroe to file certain pretrial documents within 21 days of AM filing the same. Doc. 66. Monroe's pretrial documents were due, therefore, on or before August 26, 2022. *See* Doc. 68.

On August 15, 2022, instead of filing the specified pretrial documents, Monroe sent a letter to the undersigned requesting an indeterminate extension of time because he had "a lot of material to go over with [his] new attorney" and he, his family, and his business had been affected by COVID-19. *See* Doc. 70. The undersigned returned Monroe's letter because it violated the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern

District of Florida. *Id.* at 1–2. Notably, Monroe alleged in the letter that the "Nova law firm" retained counsel on Monroe's behalf. *More than five months* have elapsed since Monroe submitted the letter, and no attorney has entered an appearance on Monroe's behalf.[2]

On September 2, 2022, the undersigned ordered Monroe to explain and show cause why he failed to submit the specified pretrial documents in accordance with the undersigned's order of July 6, 2022. Doc. 72. The undersigned imposed a deadline of September 19, 2022 to comply. The undersigned warned Monroe that failure to comply with the order likely would result in an imposition of sanctions, *including a default judgment*. Monroe did not comply with that order.

On October 11, 2022, AM filed the present motion. Doc. 74. AM asserts that sanctions under Rule 37(c)(1) are appropriate in light of Monroe's failure to produce the specified pretrial documents. *Id.* at 2; Doc. 74-1 at 2. On October 25, 2022, Monroe filed a one-page letter in response to AM's motion. Doc. 77. Monroe asserts that although he found "a lawyer," he did not have sufficient funds or time. *Id.* at 1. More than two months have passed since Monroe filed his letter, and Monroe still has not file a substantive response in opposition to AM's motion.

---

[2] Monroe repeatedly has filed documents in which he stated or intimated that he was on the verge of hiring an attorney to represent his interest in this civil action. *See* Docs. 56, 59, 61, 70.

## II. Discussion

Below, the undersigned first discusses AM's motion for sanctions under Rule 37(c)(1). Second, the undersigned discusses whether AM's allegations satisfy the default-judgment pleading standard. Finally, the undersigned discusses whether damages can be awarded without a hearing.

## A. <u>The District Court Should Enter a Default Judgment Under Rule 37(c)(1)</u>

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, a court, on motion and after giving an opportunity to be heard, also "may impose other appropriate sanctions," including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(c)(1)(C). These sanctions "are necessary to compensate the court and parties, facilitate discovery and deter abuse of the discovery process." *United States v. One 1999 Forty Seven Foot Fountain Motor Vessel*, 240 F.R.D. 695, 698 (S.D. Fla. 2007).

### 1. *Monroe Violated Rule 26(a)(3)*

Under Rule 26(a)(3), a party must provide, among other things, the name of each witness the party expects to present at trial and an identification of each document the party expects to offer at trial. Fed. R. Civ. P. 26(a)(3)(A). These

pretrial disclosures must be made as ordered by the court or at least 30 days before trial. Fed. R. Civ. P. 26(a)(3)(B). Complying with Rule 26(a)(1)'s and (a)(2)'s disclosure requirements does not excuse a party's failure to comply with Rule 26(a)(3)'s disclosure requirements. *Outley v. City of Chicago*, No. 17 C 8633, 2022 WL 4448739, at *3 (N.D. Ill. Sept. 23, 2022); *Ader v. SimonMed Imaging Inc.*, No. CV-17-02085-PHX-JJT, 2020 WL 13442907, at *2 (D. Ariz. Sept. 22, 2020).

On July 6, 2022, the undersigned ordered Monroe to file specified pretrial documents—including an exhibit list and a witness list—within 21 days of AM filing the same. Doc. 66. Monroe's pretrial documents were due, therefore, on or before August 26, 2022. *See* Doc. 68. On September 2, 2022, after Monroe failed to file the pretrial documents, the undersigned ordered Monroe to explain and show cause why he failed to submit the specified pretrial documents. Doc. 72. Monroe did not comply with that order. Additionally, as of the date of this report and recommendation, Monroe has not filed the specified pretrial documents. Thus, Monroe failed to comply with Rule 26(a)(3)'s disclosure requirements and the undersigned's order.

### 2. *Monroe's Violation Was Not Substantially Justified or Harmless*

As noted above, Rule 37(c)(1) sanctions may not be appropriate if a party's failure to comply with Rule 26(a)(3) "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A violation is "substantially justified" when "reasonable people could differ as to the appropriateness of the contested action." *Knight through*

*Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017) (quoting *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997)); *Hewitt v. Liberty Mut. Grp.*, 268 F.R.D. 681, 682 (M.D. Fla. 2010). A violation is "harmless" "when there is no prejudice to the party entitled to receive disclosure." *Hewitt*, 268 F.R.D. at 683. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quotation omitted); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

When exercising its discretion to determine whether a Rule 26 violation was substantially justified or is harmless, a court may consider the following factors:

1.  the importance of the materials that were not disclosed;

2.  the party's explanation for its failure to disclose the materials[3];

3.  the degree of prejudice to the opposing party; and

4.  whether it appears that the failure to disclose the materials was the result of negligence or willful delay.

*See Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015); *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 280 (5th Cir. 2009); *Romero v. Drummond Co.*, 552 F.3d 1303,

---

[3] This factor primarily is concerned with the possibility of a "substantial justification" for a late disclosure, although it might also be relevant to determining whether a party was acting in bad faith. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

1321 (11th Cir. 2008); *OFS Fitel, LLC v. Epstein*, 549 F.3d 1344, 1363–65 (11th Cir. 2008); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003); *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012); *Tom v. S.B., Inc.*, 280 F.R.D. 603, 610–11 (D.N.M. 2012); *Bryant v. City of Marianna*, 532 F. Supp. 133, 137 (N.D. Fla. 1982).

### (a).    The Importance of the Materials Not Disclosed

By failing to file the specified pretrial documents—including a witness list and an exhibit list—Monroe effectively has halted this litigation. That is, AM and the District Court cannot prepare adequately for, or proceed to, trial without the pretrial documents. *See Harris v. ATS Servs., LLC*, No. 1:13-CV-2500-ODE-ECS, 2014 WL 12863144, at *2 (N.D. Ga. Nov. 4, 2014) (recommending default judgment as an appropriate sanction because a business entity's failure to obtain counsel halted the litigation), *recommendation adopted*, 2015 WL 13778343, at *1 (N.D. Ga. Jan. 6, 2015). Furthermore, Monroe's previous disclosures under Rule 26(a)(1) and (a)(2) do not mitigate the need for him to make disclosures required by Rule 26(a)(3) and the undersigned's order. *See Outley*, 2022 WL 4448739, at *3; *Ader*, 2020 WL 13442907, at *2. Thus, this factor weighs in AM's favor.

### (b).    Monroe's Feeble Explanation for His Failure

Monroe essentially offers no explanation for his failure to provide the specific pretrial documents. Monroe states, without elaboration, that he had insufficient

"funds" and time. Doc. 77 at 1. Monroe presumably means that he did not have sufficient funds to hire an attorney and time to respond to AM's motion, but Monroe did not specify this. This purported explanation lacks merit for at least two reasons. First, on August 15, 2022, Monroe represented that he had retained counsel. *See* Doc. 70. Monroe's response provides no explanation for why his previously retained counsel cannot assist him in responding to AM's motion. Second, and more importantly, the parties completed discovery on May 5, 2021. Thus, Monroe has had access to the information needed for his pretrial documents for *more than 20 months*. Furthermore, *more than two months have passed* since Monroe stated that he had insufficient time to file the pretrial documents. This factor, therefore, weighs in AM's favor.

### (c).   The Prejudice from Monroe's Failure

"[I]mpeding a party's ability to prepare effectively a full and complete trial strategy" causes prejudice. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Prejudice also exists when a party's delay results in "extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party." *Trowery v. O'shea*, No. 12-6473 (NLH/AMD), 2015 WL 9587608, at *8 (D.N.J. Dec. 30, 2015).

As noted above, Monroe's failure to produce the pretrial documents has prejudiced AM by precluding the adequate preparation for trial. *See Harris*, 2014

WL 12863144, at *2, *recommendation adopted*, 2015 WL 13778343, at *1. Additionally, Monroe's failure to produce the pretrial documents has burdened the court because his failure has necessitated AM's filing additional motions—which require research and the expenditure of funds—and has required the undersigned to enter additional orders, which is an unnecessary burden borne by the court and the taxpayers. *See* Docs. 70, 71, 73, 74, 75; *see also Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (noting that in determining whether a default judgment is an appropriate sanction under Rule 37(b)(2), a district court should consider whether a party's misconduct has put an "intolerable burden" on the court). Thus, Monroe's failure has prejudiced AM and burdened the District Court significantly. This factor, too, weighs in AM's favor.

### (d).   Monroe's Failure to File the Documents Was Willful

Courts must differentiate between "innocent" mistakes that truly are harmless and intentional acts by a party that are designed to game the system or secure an advantage. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019); *OFS Fitel, LLC*, 549 F.3d at 1363, 1365 (analyzing the facts surrounding a failure to produce discovery to determine if it was the result of "willful delay or stonewalling"). In doing so, courts may consider a disobedient party's previous conduct. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 101 (D.N.J. 2006); *L. Tarango Trucking v. Cnty. of Contra Costa*, 202 F.R.D. 614, 620 (N.D. Cal. 2001).

Furthermore, a party's failure to comply with court orders—especially after being warned of potential sanctions—evidences willfulness. *Martins v. Royal Caribbean Cruises, Ltd.*, 429 F. Supp. 3d 1315, 1324 (S.D. Fla. 2019) (determining that the plaintiff's failure to comply with court orders was willful because she was "put on express notice multiple times that her case would be dismissed should she fail to comply with" court orders); *Vilsant v. Saxon Mortg. Servs., Inc.*, No. 08-61148-Civ, 2009 WL 413724, at *3–4 (S.D. Fla. Feb. 18, 2009) (same).

Monroe has not provided an adequate explanation for his failure to provide the pretrial documents, despite having *more than 20 weeks* to do so.[4] Indeed, since Monroe's counsel withdrew on July 23, 2021, he has failed to participate in this litigation in any meaningful respect:

- On January 26, 2022, Monroe failed to participate in a telephonic status conference set by the undersigned. Docs. 44–45.

- On January 26, 2022, the undersigned ordered Monroe to explain and show cause why he failed to attend the court-ordered telephonic status conference and imposed a deadline of February 9, 2022 to comply. Doc. 46. Monroe did not comply with that order.

---

[4] As noted above, the undersigned ordered Monroe to file his pretrial documents by August 26, 2022. *See* Docs. 66, 68.

- On February 17, 2022, the undersigned ordered Monroe to respond to AM's summary-judgment motion if Monroe opposed the motion and imposed a deadline of March 17, 2022 to comply. Doc. 55. Monroe did not comply with that order.

- On April 11 and 29, 2022, the undersigned granted Monroe an extension of time to file supplemental briefing with respect to AM's motion for summary judgment. Docs. 60, 62. Monroe never filed the supplemental briefing.

Furthermore, the undersigned repeatedly has warned Monroe that his failure to comply with court orders likely would result in the imposition of sanctions, including an entry of a default judgment. *See* Doc. 46 at 1; Doc. 52 at 1; Doc. 72 at 1. That has not proven sufficient to induce Monroe to comply with court orders.

Monroe's failure to provide the pretrial documents—despite having *more than 20 weeks* to do so—his failure to comply with several court orders, and his failure to heed the undersigned's warning that default judgment was an available sanction, unequivocally demonstrates that Monroe's failure to produce the pretrial documents was willful. Thus, this factor weighs in AM's favor.

\* \* \*

After considering the factors discussed above, it is apparent that Monroe's failure to provide the pretrial documents was not substantially justified or harmless under Rule 37(c)(1).

### 3. *A Default Judgment Is the Appropriate Sanction*

Because Monroe failed to comply with Rule 26(a)(3) and his failure was not substantially justified or harmless, the District Court should impose an appropriate sanction. When a party violates Rule 26(a)(3), a court can impose any appropriate sanction under Rule 37(b)(2)(A)(i)–(vi), including striking pleadings in whole or in part; staying further proceedings until the order is obeyed; dismissing the action or proceeding in whole or in part; and rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(c)(1)(C). A court also can "order payment of the reasonable expenses, including attorney's fees, caused by the" Rule 26(a)(3) violation and "inform the jury of the party's" Rule 26(a)(3) violation. Fed. R. Civ. P. 37(c)(1)(A)–(B).

A default judgment is a drastic "sanction that requires a willful or bad faith failure to obey a discovery order." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (citing *Societe Internationale pour Participantions Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958)); *Schwarz v. Vills. Charter Sch., Inc.*, No. 5:12-cv-177, 2017 WL 88951, at \*3 (M.D. Fla. Jan.

10, 2017) (same). Additionally, a default judgment as a sanction is appropriate only "when less drastic sanctions would not ensure compliance with the court's orders." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1306 (11th Cir. 2006) (quoting *Malautea*, 987 F.2d at 1542); *Archer v. Air Jam.*, 268 F.R.D. 401, 402 (S.D. Fla. 2010). A pattern of delay and deliberate refusal to comply with court orders justifies a more substantial sanction. *See Owens v. Benton*, 190 F. App'x 762, 763 (11th Cir. 2006); *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003).

Monroe's failure to comply with the undersigned's order to provide specified pretrial documents, his failure to comply with the undersigned's related order to show cause for this failure, and Monroe's failure to comply with several other orders issued by the undersigned, demonstrates that Monroe's failure to provide the pretrial documents was the result of willful action, "not negligence, misunderstanding, or inability to comply." *Archer*, 268 F.R.D. at 403 (concluding that the plaintiffs' repeated failure to comply with "orders—without any explanation—demonstrate[d] that their violations" were willful). Monroe's contumacy warrants the severest sanction: an entry of default judgment.

As to the other available sanctions under Rule 37(c)(1), Monroe repeatedly has failed to participate in this action for *more than 17 months*, despite being warned that his failure to comply with court orders would subject him to sanctions, including an entry of a default on a claim. Doc. 46 at 1; Doc. 52 at 1; Doc. 72 at 1. Thus, no

lesser sanction than an entry of default judgment likely would ensure Monroe's future compliance with court discovery or other participation in this action. *See Pal Env't Servs. Corp. v. TRANS4FED LLC*, No. 5:21-cv-184-AW-MJF, 2022 WL 3703947, at *1 n.1 (N.D. Fla. July 25, 2022) (concluding that a party's lack of engagement in the litigation demonstrated that no sanction less severe than default judgment would "be effect to address [the party's] non-compliance"); *Archer*, 268 F.R.D. at 403 (determining that the plaintiffs' repeated failure to comply with "orders and response deadlines—notwithstanding the Court's warnings that failure to do so may result in dismissal—further demonstrate[d]" that the plaintiffs would not comply as the result of lesser sanctions); *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) ("[B]ecause it appears very unlikely that there will ever be any actual litigation of this matter, other sanctions . . . would be ineffectual.").

For these reasons, a default judgment is the appropriate sanction under Rule 37(c)(1).

## B.    <u>The Default-Judgment Pleading Standard</u>

Although entry of a default judgment is an appropriate sanction under Rule 37(c)(1), before a court may enter a default judgment it must ensure that the plaintiff's underlying claims are plausible. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *Pal Env't Servs. Corp.*, 2022 WL 3703947, at *1.

Put differently, the standard for entry of a "default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245. A plaintiff's well-pleaded factual allegations, which a default defendant is deemed to have admitted, must state a plausible claim for relief. *Id.*; *Malone v. TDMW Mgmt. Inc.*, No. 5:21-cv-180-LCB, 2022 WL 507436, at *2 (N.D. Ala. Feb. 18, 2022) (same). If a court determines that a plaintiff has not stated a plausible claim for relief, however, the court should dismiss that claim. *See Surtain*, 789 F.3d at 1248; *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-cv-6996 (DLI) (RER), 2022 WL 842666, at *2–3 (E.D.N.Y. Mar. 22, 2022); *Quire v. Smith*, No. 20-60081-CIV-SINGHAL, 2021 WL 630894, at *2 (S.D. Fla. Feb. 9, 2021).

AM asserts against Monroe five claims, all of which arise under Florida law: (1) breach of contract or, alternatively, unjust enrichment, (2) fraud in the inducement, (3) fraudulent misrepresentation, and (4) fraud. Doc. 4 at 12–20. The undersigned addresses each claim below.

### 1.     *AM Fails to Plausibly Allege That Monroe Breached the Contract*

Under Florida law, a breach-of-contract claim has three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (citing *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003)).

In its amended complaint, AM alleges that it "contracted" with Monroe and TCH Construction Group, Inc. ("TCH"), "for the purchase, construction, and installation of a manufactured gable clear span shed" at AM's quarry in Marianna, Florida. Doc. 4 at 2–3 ¶ 4; *id.* at 6 ¶ 21. AM also alleges that it and Monroe later amended the contract by modifying "the size and type" of the shed TCH would install and by modifying the payment schedule. *Id.* at 7–8 ¶¶ 28, 30. AM further alleges that Monroe and TCH breached the agreement because they failed in numerous respects to comply with the construction timeline, which forced AM to "cancel" the contract. *Id.* at 10–12 ¶¶ 40–47.

AM attached the contract to its amended complaint. Doc. 4-1. AM alleged that the contract "confirmed in . . . writing" the "details" of the contract. Doc. 4 at 2–3 ¶ 4. To the extent that the agreement contradicts AM's allegations, the contract controls. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *see Surtain*, 789 F.3d at 1245 (noting that "a motion for default judgment is like a reverse motion to dismiss").

Despite AM's assertion that Monroe was a party to the contract, the contract itself does not even mention Monroe or in any way indicate that Monroe assumed

any obligations under the contract. Instead, the contract discusses TCH's and AM's respective responsibilities. Doc. 4-1 at 2–3. Because the contract in no respect indicates that Monroe was a party to the contract in his individual capacity, AM fails to plausibly allege that Monroe, as an individual, was a party to the contract. *See Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th DCA 2007) (noting that "a person who signs a contract only in a corporate capacity is not bound as an agent" under the contract) (citation omitted). Thus, the District Court should deny AM's motion for entry of a default judgment as to AM's breach-of-contract claim as to Monroe, and instead the District Court should dismiss this claim.

### 2.    *AM Fails to Plausibly Allege That Monroe Was Unjustly Enriched*

Under Florida law, an unjust-enrichment claim has three elements:

1.    the plaintiff has conferred a benefit on the defendant,

2.    the defendant voluntarily accepted and retained that benefit, and

3.    the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof.

*Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)); *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022). The benefit conferred by the plaintiff must "pass directly from the plaintiff to the defendant." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013); *Kopel v.*

*Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (same). Merely demonstrating that a defendant was a director, officer, or shareholder of a corporation that was unjustly enriched is insufficient to demonstrate that a direct benefit was conferred on that individual. *SIG, Inc. v. AT&T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1192 (S.D. Fla. 2013) (noting that the plaintiffs failed to state a plausible unjust-enrichment claim because any benefit received by the individual defendants "would have been derived indirectly by virtue of their role in the corporation, not conferred directly on them by" the plaintiffs); *see also CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, __ So. 3d __, 2022 WL 3903152, at *2–3 (Fla. 3d DCA 2022) (holding that a defendant's transfer of the plaintiff's loan to another defendant—an LLC in which the first defendant owned a 50% equity interest—did not sufficiently allege that the second defendant received a direct benefit from the plaintiff).

AM alleges that it made two payments to TCH: $154,000 on June 22, 2020, and $150,000 on July 8, 2020. Doc. 4 at 8–9 ¶¶ 29, 33. AM also alleges that TCH "voluntarily accepted and retained the benefits" of the payments. *Id.* at 17 ¶ 75. The copies of the wire transfers attached to AM's amended complaint demonstrate that TCH received AM's payments of $304,000. Doc. 4-2 at 2–3. AM offers only a conclusory assertion that Monroe "received funds from TCH . . . that were paid by [AM] without providing the corresponding benefit to [AM]." Doc. 4 at 15 ¶ 76. AM fails to set forth any factual allegations that plausibly suggest that AM conferred a

direct benefit on Monroe. *Aceto Corp.*, 953 F. Supp. 2d at 1287; *see SIG, Inc.*, 971 F. Supp. 2d at 1192. Furthermore, AM fails to allege that a "piercing the corporate veil" theory should apply in this case. *CFLB P'ship, LLC*, 2022 WL 3903152, at *3 (noting that the "piercing the corporate veil" theory can be an exception to the "direct benefit" requirement).

Thus, AM has failed to establish the plausibility of an essential element of its unjust-enrichment claim against Monroe. For this reason, the District Court should deny AM's motion for entry of a default judgment as to this claim and instead the District Court should dismiss this claim to the extent it is asserted against Monroe.

### 3. *AM's Fraud Claims*

Before addressing the plausibility of AM's fraud-related claims, the undersigned first must ensure that the independent-tort doctrine does not bar these claims. Additionally, for any fraud-related claims that are not barred by the independent-tort doctrine, AM must satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b).

### (a). The Independent-Tort Doctrine

Generally, "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. 4th DCA 2021) (quoting *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020)). But the doctrine applies only to

those parties that are in contractual privity with each other. *Costa Invs., LLC v. Liberty Grande, LLC*, __ So. 3d __, 2022 WL 17825542, at *3–4 (Fla. 4th DCA 2022); *Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018).

As noted above, AM fails to plausibly allege that Monroe is a party to the contract. The independent-tort doctrine, therefore, does not bar AM's fraud-related claims as to Monroe.

### (b).   Rule 9(b)'s Heightened Pleading Standard

When alleging a fraud-related claim, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, a claim "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [plaintiff]; and (4) what the [defendant] gained by the alleged fraud." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1343 (S.D. Fla. 2021) (quoting *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1213 (S.D. Fla. 2017)). Said differently, a plaintiff asserting a fraud claim must allege "the who, what, when, where, and how" of the events underlying the claim. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quotation omitted); *Perkins v. Nat'l LGBTQ Task Force, Inc.*, 580 F. Supp. 3d 1236, 1240 (S.D. Fla. 2021).

### (c).    AM Fails to Assert a Fraud-in-the-Inducement Claim

A fraud-in-the-inducement claim entails four elements:

1.  the defendant misrepresented a material fact;

2.  the defendant knew or should have known the falsity of the statement;

3.  the defendant intended that the representation would induce the plaintiff to enter into a contract or business relationship; and

4.  the plaintiff suffered injury in reliance on the misrepresentation.

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808–09 (11th Cir. 2010) (quoting *Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007)). "Fraud in the inducement is a recognized intentional tort that can subject a corporate officer to individual liability." *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 998 (Fla. 4th DCA 2000) (citation omitted); *see Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981) ("If . . . a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort.") (quotation omitted).

To state a viable fraud-in-the-inducement claim, the false statement or omission of material fact generally must pertain to "a past or existing fact, not a promise to do something in the future." *Bailey v. Covington*, 317 So. 3d 1223, 1228 (Fla. 3d DCA 2021) (quotation omitted); *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917

(Fla. 4th DCA 2012) (citation omitted). But there is an exception to the general rule: "a promise may be actionable as fraud where it can be shown that the [promisor] had a specific intent not to perform the promise at the time the promise was made." *PVC Windoors, Inc.*, 598 F.3d at 809 n.12 (quotation omitted); *see Witt v. La Gorce Country Club, Inc.*, 35 So. 3d 1033, 1040 (Fla. 3d DCA 2010) ("Whether a party has made intentional fraudulent misrepresentations is a question of fact.").

AM alleges that before it entered into the contract on June 8, 2020, Monroe and TCH intentionally misrepresented that the project would be complete by August 15, 2020, or "worst case scenario," September 1, 2020. Doc. 4 at 7, 15 ¶¶ 26, 68; Doc. 4-1 at 2. AM alleges that TCH and Monroe knew that in providing this timeline, they would receive a "competitive advantage on securing" the contract and intended for AM to rely on this representation in entering the contract. Doc. 4 at 15–16 ¶¶ 68–69, 71.

In support of its claim that Monroe knew that the representations were false at the time of contracting, AM alleges, among other things, that Monroe and TCH failed to install concrete footers to begin construction of the shed and that Monroe and TCH never produced the building permits required for the project. Doc. 4 at 9–11 ¶¶ 34, 39, 43.

Under these allegations, AM fails to allege with particularity facts sufficient to plausibly suggest that at the time of contracting, Monroe knew that TCH would

not perform under contract or that TCH lacked the ability to perform under the contract. The District Court, therefore, should deny AM's motion for entry of a default judgment on this claim and instead dismiss AM's fraud-in-the-inducement claim against Monroe.

### (d).   Plausible Fraud and Fraudulent-Misrepresentation Claims

Fraud and fraudulent-misrepresentation claims entail similar elements:

1.   a false statement concerning a material fact;

2.   the representor's knowledge that the representation is false;

3.   an intention that the representation induce another to act on it; and

4.   consequent injury by the party acting in reliance on the representation.[5]

*Omnipol, A.S.*, 32 F.4th at 1307 (fraud claim); *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (fraudulent-misrepresentation claim); *see Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122–23 (M.D. Fla. 2009) (noting that claims of fraud and fraudulent misrepresentation have "identical elements"). A party has knowledge that a representation is false if the party made the representation (1) "with actual knowledge of its falsity"; (2) "without knowledge either of its truth or falsity"; or (3) "under circumstances in which the person making it ought to have known, if he

---

[5] Because the elements of these claims are similar, and AM offers similar allegations in support of these claims, the undersigned addresses these claims together.

did not know, of its falsity." *In re Harris*, 3 F.4th at 1349 (quoting *Joiner v. McCullers*, 28 So. 2d 823, 824 (Fla. 1947)).

AM alleges that after making the second payment on July 8, 2020, AM emailed Monroe and TCH and expressed AM's concern that TCH would not complete the project timely. *See* Doc. 4 at 9 ¶ 34. Monroe "responded . . . with a series of excuses, misinformation, and requests for additional money." *Id.* ¶ 35. On July 8, 2020, for example, Monroe misrepresented that the shed's cost increased to $1,540,000 and that TCH and Monroe required "an additional 20% down payment of $308,000," which was inconsistent with the payment schedule set forth in the modified contract. *Id.* at 9, 18 ¶¶ 36, 85.

Additionally, Monroe misrepresented that $150,000 of AM's first payment on June 22, 2020, "was immediately paid to" the company manufacturing the shed. *Id.* at 10 ¶ 39. Rather, TCH did not make the first payment to the company manufacturing the shed until July 9, 2020. *Id.* Furthermore, AM alleges that Monroe and TCH knowingly misrepresented that no Florida building permits would be needed to complete the project. Doc. 4 at 18–19 ¶¶ 86–87.

AM alleges that it suffered damages in relying on Monroe's misrepresentations because AM did not have enough time "to harvest the correct tonnage of limestone, process and secure it in the [shed], and maintain the product to meet the demands of its customers." *Id.* at 10–11, 15, 20 ¶¶ 41, 66, 90.

Based on these alleged facts, AM plausibly alleges with particularity that Monroe intentionally misrepresented material facts regarding the status of the project with the intent that AM rely on the misrepresentations, that AM relied on those misrepresentations, and that AM suffered damages as a result of its reliance. The District Court, therefore, should enter against Monroe a default judgment on AM's fraudulent-misrepresentation and fraud claims.

## C. <u>Damages</u>

Absent a factual basis for damages in the record, a federal court must hold a hearing to determine the appropriate damages upon entry of a default judgment. *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985) ("[A] judgment of default awarding cash damages could not properly be entered 'without a hearing, unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'") (citation omitted). Indeed, "a court entering default judgment 'has an obligation to assure that there is a legitimate basis for any damage award it enters.'" *Pal Env't Servs. Corp.*, 2022 WL 3703947, at *2 (quoting *Anheuser Busch, Inc.*, 317 F.3d at 1266).

Neither AM's motion for a default judgment nor its amended complaint contain a damages calculation for AM's claims. *See* Docs. 4, 74. In a related motion for default judgment against TCH and TRM Transporting, LLC, another defendant

in this action, AM requests $304,000. Doc. 67 at 9. That amount, however, stems only from AM's breach-of-contract claim.

Given that AM's damages arising from its fraudulent-misrepresentation and fraud claims against Monroe cannot be determined without additional information, the undersigned recommends that the District Court conduct a hearing to determine the appropriate amount of damages to be awarded or that the District Court refer this case to the undersigned to conduct such a hearing.

### III. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Plaintiff AM's motion for default judgment under Rule 37(c)(1), Doc. 74, as follows:

1.    Enter a default judgment against Defendant Timothy W. Monroe as to AM's claims of fraudulent misrepresentation and fraud.

2.    Dismiss Plaintiff AM's claims of breach of contract, unjust enrichment, and fraud in the inducement with respect to Defendant Monroe.

3.    Conduct a hearing to determine the appropriate damages to be awarded or refer this case to the undersigned to conduct such a hearing.

**SO ORDERED** this 23rd day of January, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**